## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
## CENTRAL ISLIP DIVISION

| | |
|---|---|
| DAVID ROBERTS,<br><br>        Plaintiff,<br><br>v.<br><br>TRANSERVICE LOGISTICS, INC.,<br><br>        Defendant. | Case No. _____ |

## COMPLAINT

COMES NOW Plaintiff David Roberts ("Roberts"), by and through his undersigned counsel, and hereby files his Complaint against Defendant Transervice Logistics, Inc. ("Transervice" or "Defendant"), respectfully showing to the Court as follows:

Roberts brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), § 502(a)(3), 29 U.S.C. § 1132(a)(3), due to Defendant's abusive and arbitrary and capricious actions with regard to an ERISA-governed employee benefit health and welfare plan, specifically the Transervice Logistics, Inc. Health and Welfare Plan (the "Plan").

## PARTIES

1.      David Roberts is a former employee of Transervice Logistics, Inc., and as such, was a participant in the Plan at certain times relevant to this action.

2.      Roberts is a resident of Hart County, Georgia, but submits to the jurisdiction of this Court for purposes of this lawsuit.

3.      The Plan is an employee health and welfare plan governed by ERISA, 29 U.S.C. § 1001, *et seq*.

4.      Transervice, as Plan Administrator of the Plan, may be served with process at 5 Dakota Drive, Lake Success, New York 11042.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 29 U.S.C. §§ 1132(a) & (e), and 28 U.S.C. §§ 1331 & 1332.

6.      Venue is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) because the Plan is administered in this District.

## FACTS

7.      On or about April 30, 2017, David Roberts, at the young age of 26, was horrifically injured when he was struck by a commercial vehicle traveling along I-85 near mile marker 145 in Georgia.

8.      Roberts had stopped on the side of the road to render aid to a man whose truck had broken down. While Roberts worked on the stranded driver's truck, the

2

commercial vehicle veered into the shoulder of the highway colliding with Roberts and the truck Roberts was attempting to repair.

9.      Before the accident that would change his life forever, Roberts had a good job and a bright future.  Roberts was an avid outdoorsman who frequently hiked, camped, and lived off the land hunting and fishing.  He led an active daily lifestyle working out, running, and riding dirt bikes.  All of that changed in an instant.

10.     Unlike the countless number of drivers who pass by a broken-down vehicle on the side of the highway without stopping, Roberts pulled over and rendered aid to a man and his broken-down truck.  While repairing the truck, his life was unfathomably changed.  Roberts and the truck he repaired were struck by a commercial truck—driven by a fatigued truck driver who had failed to take the breaks required by the Federal Motor Carrier Safety Regulations—when the truck veered off the highway and onto the shoulder where Roberts was standing.

11.     Roberts was taken from the scene of the accident by ambulance to Northeast Georgia Medical Center where he was immediately given blood transfusions and taken into the operating room due to massive bleeding from injuries to both legs.  Roberts legs were both mangled with significant fractures, bone damage, and soft tissue loss.  Additionally, Roberts experienced tissue damage and lacerations to his left upper extremities, Class IV hemorrhagic shock requiring aggressive blood products, acute hypoxic respiratory failure, acute kidney injury

3

secondary to rhabdomyolysis and mangled extremities requiring hemodialysis, dysphagia, azotemia, hypernatremia, leukocytosis, hypertension, and depression.

12.     The surgeons tried desperately, via multiple surgeries, to save Roberts' legs, but unfortunately, both had to be amputated—one above the knee and one below the knee.   During a hospital stay, Roberts developed MRSA and osteomyelitis, neither of which will ever go away.  Due to the osteomyelitis, Roberts has required three additional stump revision surgeries and doctors believe that they will have to convert his below knee amputation to an above-the-knee amputation. Roberts additionally faces hip and knee (on the below-the-knee leg) replacement surgeries due to soft tissue damage that occurred when he was struck by the truck. Roberts' life has changed both tragically and significantly.

13.     Roberts incurred medical expenses during this long, ongoing, and painful recovery amounting to approximately $1.4 million dollars.  Roberts, through counsel, received written notice from the Plan requesting reimbursement for paid medical expenses under the Plan in the approximate amount of $726,410.68 (the "Lien").

14.     Roberts has continued to try to recover from his disabling injury and to prepare for a future that requires wheelchairs, additional surgeries, and a lifetime of pain and suffering.  Part of this preparation includes recovering monetarily from the tractor-trailer driver who caused his injuries.

15.     As a double amputee, Roberts can reasonably expect to require multiple surgeries over his lifetime and due to one leg being an above-the-knee amputation and the other below-the-knee, his mobility will be extremely limited.  A Certified Life Care Planner developed a Life Care Plan for Roberts with a present-day value of Roberts' future expenses totaling well over $16 million dollars.

16.     As Roberts is no longer employed by Transervice, his entitlement to participate in the Plan has ceased and accordingly, the Plan will bear no responsibility for any of Roberts' current or future medical costs.

17.     Upon information and belief, the Plan Administrator and/or its designee has exercised its Plan-given discretion to reduce or eliminate liens of other participants or beneficiaries in less compelling facts and circumstances than Roberts'.

18.     The Plan Administrator, out of wanton disregard, or intentionally to cause further stress or undue harm upon plaintiff, has refused to exercise its discretion to mitigate, reduce or eliminate a portion of the lien.

19.     The Plan Administrator, out of a desire to further aggravate, stress and/or harm Plaintiff, due in whole or in part to his separation of employment, has refused to exercise its discretion to mitigate, reduce or eliminate a portion of the lien.

20.     The Plan Administrator has refused to exercise its Plan-given discretion with regard to reducing or eliminating the Lien for Roberts, as evidenced by the

Administrator's refusal to respond directly to Roberts' letter dated June 5, 2020 to Transervice requesting an exercise of this discretion in Roberts' case. (*See* June 5, 2020 Letter to Transervice, attached hereto as Exhibit A.)  Rather than responding directly to the June 5, 2020 Letter from undersigned counsel, Transervice caused its collection agent, Conduent, to communicate Transervice's refusal to exercise its discretion in this case.

21.    The Plan Administrator has sought to cause further harm, stress, and/or aggravation to Plaintiff's mental and physical health and well-being through its conduct.

### COUNT I – BREACH OF FIDUCIARY DUTY: 29 U.S.C. § 1132(a)(3)

22.    The allegations contained in Paragraphs 1-21 above are re-alleged and incorporated by reference as if fully set forth herein.

23.    Defendant is a "fiduciary" as defined by ERISA and required by the Plan and ERISA to act in the best interests of the participants and beneficiaries of the Plan.

24.    A provision of the Plan's Summary Plan Description ("SPD") states:

> The Plan Administrator has the discretionary authority to control and manage the operation and administration of the Employer's self-funded medical and drug benefit Plan.  The Plan Administrator in his or her discretionary authority, will determine benefit eligibility under such self-funded Plan, construe the terms of the self-funded Plan *and resolve any disputes which may arise with regard to the rights of any person under the terms of the self-funded Plan*, including but not limited to eligibility for participation and claims for benefits.

6

(*See* Plan SPD attached hereto as Exhibit B, at p. 4, emphasis added.)  Further, in the Subrogation and Reimbursement section of the SPD, the language reserves discretion for the reduction of liens for attorneys' fees: "No Participant hereunder shall incur any expenses on behalf of the Plan in pursuit of the Plan's rights hereunder, specifically; no court costs, attorneys' fees or other representatives' fees may be deducted from the Plan's recovery *without the prior express written consent of the Plan*."  (*See* Exhibit B, p. 45, emphasis added.)  These reservations of discretionary authority in the SPD provide the Plan Administrator (Defendant) the authority and discretion to eliminate, or to reduce the lien amount in circumstances where, *inter alia*, the participant needed to incur expenses (like attorneys' fees) to recover losses, as Roberts did here.

25.    Roberts is a beneficiary of the Plan and entitled to the fair exercise of discretion afforded to the Plan Administrator and required by ERISA.

26.    The anticipated costs of treatment and care include tens of millions of dollars' worth of care over the course of Roberts' life, directly attributable to the injuries he suffered.   Because Roberts is no longer employed by Transervice and consequently, is no longer a participant of the Plan, the vast majority of these costs of treatment and care will not be borne by the Plan.  In this situation, it is inequitable for Transervice to refuse to reduce or eliminate the Lien.

27.    The Plan Administrator, fully aware of the costs and hardship that

7

Roberts will have to endure over his lifetime, has an obligation to act in Roberts' best interest to exercise its discretion to reduce or eliminate the value of the Lien it is seeking to recover from Roberts.

28.    This failure or refusal to exercise discretion, in light of the overwhelming facts and Plan language requiring and empowering the Plan Administrator to do so, represents an abuse of discretion. *See, e.g., State v. Montiel*, 122 P.3d 571, 575 (Utah 2005) (citing *United States v. Miller*, 722 F.2d 562, 565 (9th Cir. 1983) ("As a general rule, the existence of discretion requires its exercise."); *People v. Darlington*, 105 P.3d 230, 232 (Colo. 2005) ("Failure to exercise discretion is itself an abuse of discretion.")).

29.    The Plan Administrator's failure or refusal to exercise its discretion in this instance based on the facts and circumstances, and continuing attempts to enforce this inequitable Lien, in light of Roberts' permanent disability and limited future economic prospects, and in light of prior exercises of discretion in less compelling circumstances than Roberts', constitute breaches of the Plan Administrator's fiduciary duties in violation of ERISA § 502(a)(3). 29 U.S.C. § 1132(a)(3).

30.    Roberts seeks equitable remedies for the losses he has experienced including but not limited to an injunction preventing the Plan from seeking to enforce the inequitable Lien relating to Roberts' disabling injuries.

8

## COUNT II – ATTORNEYS' FEES: 29 U.S.C. § 1132(g)

31.     The allegations contained in Paragraphs 1-27 above are re- alleged and incorporated by reference as if fully set forth herein.

32.     Title 29 U.S.C. § 1132(g) provides that the Court may award reasonable attorneys' fees and costs of bringing this action.

33.     Transservice has acted reprehensibly in trying to extort and recover the ~$726,000 from Roberts who has outrageous future expenses that far outweigh his recovery.  Transservice has refused to engage in any discretionary reduction of the Lien's full value, in violation of the Plan language and the Plan Administrator's overriding fiduciary duty to protect the interests of plan participants and beneficiaries.

34.     In an action brought by a "participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party" (29 U.S.C. § 1132(g)(1)), so long as the party achieves "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2158 (2010). This Court should award Plaintiff his reasonable attorneys' fees and the costs of bringing this action.

WHEREFORE, Plaintiff David Roberts prays that the Court:

(a)     Issue a declaratory judgment that Defendant has abused its discretion in attempting to recover ~$726,000 from Roberts in violation of ERISA § 502(a)(3);

9

(b)     Award Roberts equitable remedies for the losses he has experienced occasioned by Defendant's fiduciary breaches, including but not limited to interest incurred in holding the potential Lien amount in trust pending Defendant's threats and breaches of fiduciary duty;

(c)     Award Roberts all appropriate relief to remedy what he has suffered as a result of Defendant's abuse of discretion;

(d)     Award Roberts the reasonable costs and expenses of this action, including reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

(e)     Grant such other and further relief as this Court deems just and appropriate.

This 18th day of November, 2020.

/s/ Jason A. Newfield
Jason A. Newfield, Esq.
NY Bar No. JN-5529

FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue- Suite 312
Garden City, New York 11530
(516) 222-1600 telephone
jan@frankelnewfield.com

/s/ Nancy B. Pridgen
Nancy B. Pridgen, Esq.
Georgia Bar No. 587949
(Pro Hac Vice Pending)

PRIDGEN BASSETT LAW, LLC
One Glenlake Parkway, Suite 650
Atlanta, Georgia  30328
(404) 551-5884 direct
(678) 812-3654 facsimile
nancy@pridgenbassett.com
Counsel for Plaintiff

10